Moncrief, J.
(dissenting.) The plaintiff being the owner of 319 bales of cotton, shipped on board the steamship Indian *551 Empire, at New York, to be carried from said city to Galway, caused an insurance thereon to be effected by and with the defendants. This cotton was destroyed while at sea, being burned as fuel while the ship was in imminent peril, and with the view to keep her afloat and to save the lives of those on board, as well as to enable the ship to reach a port of safety or her destination.
The jury was instructed, “ that if the ship started from New York with an insufficient supply of coals for her whole voyage, the plaintiff, could not recover, and of that sufficiency they must be the judges. * * That the quantity of coal which she had on board when she left New York was amply sufficient for the voyage, having reference to any delays or retardations in the voyage which might reasonably be anticipated by persons of competent skill and experience, (from adverse winds and storms on that voyage at that season of the year,) then she was seaworthy so far as that fact depended on the quantity of coal on board,” * * “ If you find that she was seaworthy when she left New York, the defendants cannot avoid a recovery on the mere ground of the omission of the master to take in a larger supply of coal at Halifax, or to make repairs to the sails which, upon the evidence, it can be said he omitted to make.” In other words, “ if the vessel was seaworthy when she left New York, the plaintiff is entitled to recover so far as his right depends upon the question whether the vessel was, in fact, seaworthy or not.” To this portion of the charge of the learned judge, exception was taken by the defendants, and was the main, if not substantially the only, point urged as error and ground of reversal of the judgment. There is an abundance of testimony upon the theory thus presented to justify the jury in finding for the plaintiff and in sustaining their verdict^ against the defendants, There remains, therefore, only to be considered whether the rule of law was correctly given to the jury in the part of the charge to them just quoted; andibefore such an examination is made it may be useful to know the relation of the parties as it is developed by their contract. It appears the cotton was shipped at New York “ on' board the good steam *552 ship Indian Empire, whereof —:— Courtney is master, for this present voyage, or whoever else shall go for master in the said vessel;” that the plaintiff “ warranted” the cotton “ free from damage or injury from dampness, change of flavor, or being spotted, discolored, musty or mouldy, except caused by actual contact of sea-water with the articles damaged, occasioned by sea perils,” the defendants “ beginning the adventures upon the said goods and merchandises from and immediately following the lading thereof, on board of the said vessel as aforesaid, and so shall continue and endure until the said goods and merchandise shall be safely landed at, as aforesaid.” “ Touching the adventures and perils which the said Orient Mutual Insurance Company is contented to bear and take upon itself in this voyage, they are of the seas, men-of-war, fires, enemies, pirates, rovers, thieves, jetisons,. letters of mart and counter-mart, reprisals,«taking at sea, arrests, restraints and detainments of all kinds, princes or people, of what nation, condition or quality soever, barratry of the master and mariners, and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods and merchandises, or any part thereof.”
It was not disputed that the cotton was in good order when shipped at New York; the defense, having relation to the subject now discussed, was a denial that the ship was seaworthy when she left the port of New York, * that she was not provided with a sufficient quantity of coal for fuel in the prosecution of her intended voyage * * and negligence of her owners, master or crew in not providing a secure place for the fuel with which she was provided. * * * Unembarrassed by principles promulgated by elementary writers upon maritime law, and avoiding the recognition of expressions of learned jurists in cases determining the rights of parties under contracts of marine insurances, it seems to me a simple matter to construe the agreement in question, ascertain the liability of the defendants, and to announce the principle upon which such liability is based. Under their agreement the defendants clearly were liable after the cotton was on board the ship while lying at the *553 wharf if it had been destroyed by fire; after the ship had commenced her voyage, the necessity existing therefor, the defendants could not claim exemption for loss sustained by the cotton of the plaintiff being thrown overhoard ; in case the captain or crew had stolen the boats of the ship, and with the cotton abandoned the ship, the loss of the plaintiff being one of the perils insured against must be made good by the defendants. The principle so generally found in use in elementary books and quoted approvingly by jurists, in my opinion, has no application to such a policy of insurance-or indeed to the policy in general use where insurance is effected upon “cargo” not belonging to the owners of the vessel. I suggest, with great deference to so-called authority to the contrary, that an “ implied warranty that the vessel is seaworthy when the policy attaches,” can have reference alone to an insurance upon the vessel and cannot arise where only the cargo on board of a ship is insured by a stranger.
Arnould, (vol. 1, p. 667,) says : * * The assured is bound not only to have his vessel seaworthy at the commencement of the voyage, but to keep her so, so far as it depends on himself, during the continuance thereof, and at the commencement of all its stages.” The propriety and reason of this rule, even if not too broadly stated, is apparent; the owner of a vessel is always on board of his vessel by his agent, the master and .crew, and if a loss occur to the vessel by wantonness or negligence, it cannot be said that the injury and loss is attributable to a peril of the sea or a peril insured against. There was no express warranty by the plaintiff that the vessel in which his goods were shipped was seaworthy ; was there an implied warranty of seaworthiness ? By this term is meant, (says Parsons on Mercantile Law, pp. 442, 3,) “that every person who asks to be insured upon his ship by the mere force and operation of law, warrants that she is in every respect of hull, sails, rigging, officers, crew, provisions, implements, papers and the like, competent to enter upon and prosecute that voyage at the time proposed and encounter safely the common dangers of the sea.” Row it will not be denied that the policy attached, if at all, the *554 moment all the goods were on board of the vessel after the agreement to insure had been made, nor that in case of a breach of any implied warranty at such a time there never was a valid contract of insurance. (3 Kent’s Com. 288. Paddock v. Franklin Ins. Co., 11 Pick. 227.) The reason assigned for this implied warranty invoked and existing by mere force and operation of law arises from the duty of the insured to communicate every species of intelligence which he possesses or must be presumed to possess, having relation to the subject matter sought to be covered by insurance. The omission to disclose what perhaps he alone knows, or can control and regulate, which might greatly enhance the risk and augment the amount of premium to be paid, being plainly fraudulent, necessarily vitiates the contract. The plaintiff owned the goods, and had no interest in the vessel.
The owner of a vessel may, as matter of law, be deemed to possess knowledge concerning its soundness and competency ; he is at liberty at his owif pleasure and sole will to supply insufficient sails, rigging, provisions, implements, papers and the like for his vessel; he may, without hindrance from any person, employ whomsoever he pleases as captain, officers and crew, and default on his part in so doing should not be chargeable against another ; the injury happening to his vessel by reason thereof is the result of his own misconduct arising from his own acts.
The shipper of goods may or may not have some or perfect knowledge of the hull of the vessel; so may the underwriter have, and in most instances in this great commercial city he has as good and most generally an infinitely greater acquaintance with the character of the builder, the materials used, the time of'her launch, the voyages run, the class of officers, &c. usually employed by her owners. But how, ordinarily, would it be possible for the shipper of goods to ascertain, before or at the time his goods are placed on board of the vessel, what particular captain or officers or crew are to be employed to conduct the voyage, or being engaged in prosecuting the voyage, will not, at its threshold, mutiny or abandon the ship, demanding *555 a new selection; and how will he then ascertain who supply the places of those thus leaving ? Or suppose the goods are on board of the vessel one week or a day, and the owner of the vessel one hour before she sails supplies wholly improper and insufficient provisions, sails and implements, will the law imply a breach of duty against the shipper of goods for this unseaworthiness ? Again, it-is well known that the last duty, or. among the very last acts of the owner of the vessel is to provide proper papers from the custom house, and that none but he can procure them, and the cargo being all on board, and the vessel in readiness to sail is lying out in the stream, does the law require of the shippers of goods that they shall accompany the.owner of the vessel and see that improper papers are not obtained ? It seems to me that the law cannot be considered as demanding what not only is impracticable but manifestly absurd and unjust. Neither the fraud, misconduct or negligence of the owner of the vessel or of his selected agents can be imputed to the mere shipper of goods. The owner of cargo, even if an expert and on board the vessel from the commencement until the termination of her voyage, could exercise no control or authority upon those having charge of it, and however imminent the danger to himself, the vessel or cargo, even were he possessed of sufficient physical force to make the attempt at interference with the master in his conduct of the ship, would possibly merely involve himself in a new peril. The master and crew navigating and controlling the vessel are the servants of the owner of the vessel and owe no legal duty to the owner of her cargo; their misfeasance and nonfeasance are imputable only to the party whose servants they are and in whose business they are acting. (Mathews v. The Howard Insurance Co., 1 Kern. 15.) Aside, therefore, from the fact that the defendants did not set Up as a defense that the vessel was tin seaworthy when she left Halifax in not finding a larger or further supply of coal or repairing the sails, and leaving out of view that each of these matters were inferential rather than established affirmatively on behalf of the defendants, it appear *556 ing that the charge as made was more favorable than the defendants were entitled to, the exception must be held untenable.
The other exceptions noted upon the points of the learned counsel were not argued, and seem to me to be fully met and answered by the points on behalf of the respondent, and therefore are held to have not been well taken.
I think the judgment and order denying the motion for a new trial should be affirmed, and therefore dissent from the conclusion to which my brethren have arrived.
New trial granted.